## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

ESTATE OF LAZARUS WILSON
& TANYA WILSON,

    *Plaintiffs*,

  v.

DISTRICT OF COLUMBIA, *et al.*,

    *Defendants*.

2023-cv-1987-DLF

## DEFENDANTS [FORMER] INTERIM CHIEF OF POLICE ASHAN BENEDICT, DISTRICT OF COLUMBIA, AND COMMANDER JASON BAGSHAW'S MOTION TO DISMISS AND THE DISTRICT OF COLUMBIA'S PARTIAL MOTION FOR SUMMARY JUDGMENT

Defendants [Former] Interim Chief of Police Ashan Benedict, District of Columbia (the District), and Metropolitan Police Department Commander Jason Bagshaw move this Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all claims in the complaint.  As grounds for this motion, the plaintiffs have failed to state a claim for which relief can be granted under any theory of liability.  The District also moves for partial summary judgment because the plaintiffs failed to comply with the mandatory requirement under D.C. Code § 12-309 to notify the District of their potential claims within six months of injury.

A memorandum of points and authorities, along with proposed order, are attached in support of the defendants' motion.

Date:  October 2, 2023    Respectfully submitted,

         BRIAN L. SCHWALB
         Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Patricia A. Oxendine*
PATRICIA A. OXENDINE
D.C. Bar No. 428132
Chief, Civil Litigation Division, Section I

*/s/ Kerslyn D. Featherstone*
KERSLYN D. FEATHERSTONE
D.C. Bar No. 478758
Senior Assistant Attorney General
JAMES UNDERWOOD III
D.C. Bar No. 1765117
Assistant Attorney General
Office of the Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
(202) 724-6600 (direct); (202) 701-0255
(202) 741-8924 (fax)
kerslyn.featherstone@dc.gov;
james.underwood@dc.gov

*Counsel for former Interim Chief Ashan Benedict, the
District of Columbia, and Commander Jason Bagshaw*

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

| |
|---|
| ESTATE OF LAZARUS WILSON & TANYA WILSON,<br><br>   *Plaintiffs*,<br><br>  v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>   *Defendants*. |

2023-cv-1987-DLF

**MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF DEFENDANTS [FORMER] INTERIM CHIEF OF POLICE ASHAN BENEDICT, THE DISTRICT OF COLUMBIA, AND COMMANDER JASON BAGSHAW'S MOTION TO DISMISS AND THE DISTRICT OF COLUMBIA'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

Defendants [Former] Interim Chief of Police Ashan Benedict, District of Columbia (the District) and Commander Jason Bagshaw submit this memorandum of points and authorities in support of their motion.

**INTRODUCTION**

Plaintiffs, the Estate of Lazarus Wilson and Tanya Wilson, have failed to properly plead liability against these defendants on any claim identified in the complaint. *First,* the plaintiffs' official capacity claim against former Interim Chief of Police Ashan Benedict fails as a matter of law because an official capacity suit is against the District who is already a party to this action. *Second,* because former Interim Chief Benedict was not Commander Bagshaw's employer nor is *respondeat superior* liability a stand-alone claim, the plaintiffs cannot proceed against these defendants under the stand-alone claim. *Third,* gross negligence is an improper claim and fails as a matter of law. *Fourth,* Commander Bagshaw is

entitled to qualified immunity on the constitutional claim of excessive force and a privilege for the common law claim of assault and battery (Count IV).  *Fifth,* the plaintiffs have not sufficiently raised a municipal liability claim against the District under 42 U.S.C. § 1983.  *Sixth,* the plaintiffs' Wrongful Death Act and Survival Act claims (Counts II and V) fail as a matter of law because the underlying claims under 42 U.S.C. § 1983, gross negligence, and assault and battery cannot be maintained.  *Seventh,* punitive damages are not available against the District of Columbia and Commander Bagshaw.  *Finally,* the plaintiffs' failure to notify the District as required under D.C. Code § 12-309 within six months of the injury is fatal to their state law claims against the District.

## FACTS

The plaintiffs sued defendants for alleged constitutional and common law violations stemming from the shooting death of Lazarus Wilson on or about July 16, 2022.  *See* Compl. [1].  The plaintiffs allege that Lazarus Wilson and a friend met at the D.C. Wharf in Washington, D.C. to purchase a watch.  *Id.* at ¶ 12.   The plaintiffs asserted that while Mr. Wilson was waiting to make the sale, he recognized one of the individuals approach and grab his friend at gunpoint and began to pull him to an unknown car.  *Id.*  at ¶ 16.  Mr. Wilson, who was also armed, allegedly pulled out his weapon in self-defense.  *Id.* at ¶ 19.  Commander Bagshaw was off-duty having dinner at Du Jour restaurant.  *Id.* at ¶ 11.  The plaintiffs allege Commander Bagshaw exited the restaurant and when he saw Mr. Wilson with a gun, shot him.  *Id.* at ¶¶ 19-20.   Mr. Wilson died from his injuries.  *Id.* at ¶ 33.

The plaintiffs did not send the Mayor or the Office of Risk Management notice of their potential claims six months after Mr. Wilson's death.  *See* Statement of Undisputed Material Fact (SUMF) No. 1. But on July 11, 2023, the plaintiffs sued these defendants, asserting seven counts:  Count I – §1983 Fourth Amendment Excessive Force Against Commander Bagshaw; Count II – Wrongful Death Against Commander Bagshaw; Count III – Gross Negligence Against Commander Bagshaw; Count IV – Assault

and Battery Against Commander Bagshaw; Count V – Survival Action Against Commander Bagshaw;

Count VI – Gross Negligence Against Ashan Benedict and District of Columbia; Count VII –

*Respondeat Superior* Liability Against Ashan Benedict and District of Columbia.  The plaintiffs aver

that both Interim Chief Benedict, in his official capacity, and the District are liable under § 1983 "for

their failure to train or supervise their Officer Bagshaw not to engage in activities with the public

under his official capacity while a law enforcement officer while off-duty."  *See* Compl. ¶ 99.  The

defendants now seek judgment on all asserted claims.

## LEGAL STANDARD

### I.   Motion to Dismiss.

A party may move for dismissal under Fed. R. Civ. P. 12(b)(6) when a complaint fails to state a

claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  When conducting a 12(b)(6)

analysis, a court should "assume the truth of all well-pleaded factual allegations and construe reasonable

inferences from those allegations in a plaintiff's favor."  *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C.

Cir. 2016) (citations omitted).  But a court need not accept as true "legal conclusions couched as factual

allegations."  *Id.*  Furthermore, a complaint will not suffice if it merely alleges "naked assertion[s]

devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).

The facial plausibility requirement is satisfied if the factual content pleaded allows a court to draw a

reasonable inference that the defendant is liable for the alleged misconduct.  *Id.* (citing *Twombly*, 550

U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Id.*  If a complaint does not state a plausible claim for relief, it will not

survive a motion to dismiss.  *See id*. at 679.

## II.    Motion for Summary Judgment.

Summary judgment is appropriate upon a showing that "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A

factual dispute is material if it could alter the outcome of the suit under the substantive governing

law."  *Slack v. Washington Metropolitan Area Transit Auth*., 353 F. Supp. 3d 1, 6 (D.D.C. 2019)

(quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  "Nor may summary judgment be

avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine,"

meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the

non-movant."  *Diaz v. Washington Metropolitan Area Transit Auth*., 243 F. Supp. 3d 86, 88 (D.D.C.

2017) (quoting *Anderson*, 477 U.S. at 248).

Conclusory allegations with no basis in the record will not allow the non-movant to escape

summary judgment.  *Id*. (citing *Ass'n of Flight Attendants-CWA, AFL-CIO v. United States Dep't of

Transp.*, 564 F.3d 462, 465 (D.C. Cir. 2009)).  "If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted."  *Id*. (quoting *Anderson*, 477 U.S. at 249-

50).  "[A]complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial."  *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

## ARGUMENT

## I.    The Plaintiffs' Official-Capacity Lawsuit Should Be Dismissed.

The plaintiffs have sued former Interim Chief Ashan Benedict only in his official-capacity.  *See*

Compl. ¶ 7.  Indeed, there are no factual allegations that former Interim Chief Benedict had any personal

knowledge about any of the facts alleged in the complaint.  *Id.* ¶¶ 1-113.  It is well settled that a "suit

against a state official in his or her official capacity is not a suit against the official but rather is a suit

against the official's office." *See Will v. United States*, 491 U.S. 58, 71 (1989), citing *Brandon v. Holt*, 468 U.S. 464 (1985). *See also Robinson v. District of Columbia*, 2005 U.S. Dist. LEXIS 3556 (D.D.C. 2005) (Mayor Williams dismissed from suit when named only in his official capacity); *Arnold v. Moore*, 980 F. Supp. 28 (D.D.C. 1997) (dismissing District officials sued in their official capacity). The U.S. Supreme Court has ruled on the issue of official-capacity suits as follows:

> Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' [Citation omitted.] As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. [Citation omitted.] ... the real party in interest is the entity. Thus, ... a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*See Kentucky v. Graham*, 473 U.S. 159 (1985). Since the suit against former Interim Chief Benedict is only in his official capacity, it is deemed a suit against the District. Thus, Counts VI and VII should be dismissed against former Interim Chief Benedict because the plaintiffs must seek relief from the District; the District is already a party to this lawsuit.

## II. *Respondeat Superior* Is Not A Stand-Alone Claim And Should Be Dismissed.

*"*Vicarious liability... is merely a legal concept used to transfer liability from an agent to a principal[,] and includes the theory of *respondeat superior* as developed in agency law." *Convit v. Wilson*, 980 A.2d 1104, 1114 (D.C. 2009) (citations omitted). "Under that theory, the responsibility of an agent for his own legally careless action is imputed to the principal." *Id.* While *respondeat superior* is a legal basis by which an employer may be held liable for torts committed by its employees or agents, it may not be asserted as a stand-alone claim. *See Logan v. Jones Lang LaSalle Americas, Inc.*, 18-CV-02278 (APM), 2019 WL 1960208, at *1, n. 1 (D.D.C. May 2, 2019) ("However, '*respondeat superior'* is not a stand-alone claim, but rather a basis for finding Defendants liable for the conduct of their employees or agents."). Here, because former Interim Chief Benedict was not Commander Bagshaw's

employer, he cannot be held liable under a theory of *respondeat superior* liability.  *See* ¶ 8 (Commander Bagshaw was employed by the Metropolitan Police Department).  Moreover, the stand-alone claim for *respondeat superior* liability is not actionable.  *Id.* ¶¶ 108-113 (Count VII).  Thus, dismissal of Count VII against both former Interim Chief Benedict and the District is appropriate.

**III.**  **The Plaintiffs' Claims of Gross Negligence Fail As A Matter of Law.**

"The law of the District of Columbia does not recognize degrees of negligence," unless there is statutory authority authorizing it.  *See Hernandez v. District of Columbia,* 845 F. Supp. 2d 112, 115 (D.D.C. 2012) (quoting *Warner v. Capital Transit Co.,* 162 F. Supp. 253, 256 (D.D.C. 1958), dismissing gross negligence claim as duplicative of ordinary negligence claim.)  Here, there is no statutory authority which allows for pleading gross negligence for the claims asserted by the plaintiffs.  Rather, statutes only allow for a gross negligence finding in emergency run cases and cases concerning damage of property.  *See* D.C. Code § 2-412 (requiring a finding of gross negligence for collisions involving emergency government vehicles on emergency runs).  *See also* D.C. Code § 5–119.11 (authorizing a finding of "gross negligence" rather than ordinary negligence when an "employee [damages] … property as a result of gross negligence in the removal, transportation, or storage of such property. . . .") Because there is no statute which authorizes the plaintiffs' gross negligence claims here, dismissal of the gross negligence claims asserted in Counts II, III, V and VI is appropriate.

**IV.**  **The Plaintiffs' Municipal Liability Claim Against the District Fails As It is Improperly Pled.**

The plaintiffs assert that former Interim Chief Benedict and the District are liable under § 1983 because they failed to train Commander Bagshaw "not to engage in activities with the public under his official capacity as a law enforcement officer while off-duty."  *See* Compl. ¶ 99.  These allegations are not enough to support municipal liability under § 1983.  Indeed, municipal liability under § 1983 is severely limited and does not allow for *respondeat superior* liability.  *See Monell v. New York City*

*Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  The Supreme Court has instructed that "at the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 824 (1985).  Stated otherwise, the municipal policy, practice, or custom must be the "moving force" behind the alleged constitutional injury.  *See Monell,* 436 U.S. at 658.  Indeed, a § 1983 plaintiff must identify a municipal policy, custom, or practice that caused the plaintiff's alleged constitutional injury.  *See Board of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *see also Bush v. District of Columbia*, 595 F.3d 384, 386 (D.C. Cir. 2010).  Here, because the plaintiffs' municipal liability claim is based merely on their averment that Commander Bagshaw should have been but was not taught not to engage in activities with the public while off-duty, the claim fails as a matter of law.  *See* Compl. ¶ 99.  *Cf. id.* ¶ 63 ("Officer Bagshaw, did not comply with his police trainings and protocol pursuant to General Order 901.07 for the Metropolitan Police for the District of Columbia;" ¶ 64 ("Pursuant to General Order 901.07, 'Members shall not use deadly force against a person unless the member reasonably believes that deadly force is immediately necessary to protect the member or another person from the threat of serious bodily injury or death, the member's actions are reasonable given the totality of the circumstances, and all other options have been exhausted or do not reasonably lend themselves to the circumstances ... To the greatest extent possible, members shall ensure that the use of deadly force presents no substantial risk of injury to innocent persons. Members shall not discharge their weapon into a crowd, as a signal for help, or as a warning shot.'")  These allegations are just not enough to support municipal liability given there is no showing that the District's customs, practices or policies were the moving force for the shooting.

**V.**      **Commander Bagshaw Is Entitled To Qualified Immunity For the Alleged Constitutional Violation and A Privilege for the Assault and Battery Claim.**

Commander Bagshaw is entitled to qualified immunity for the plaintiffs' § 1983 claim for excessive force claim (Counts I) and a privilege for the asserted assault and battery claim (Count III) arising from the shooting death of Mr. Wilson.  Here, the defendants have analyzed the excessive force claim and the assault and battery claims simultaneously based on an objective reasonable standard.  *See Henry v. Purnell,* 652 F.3d 523, 531 (4th Cir. 2011)(citing *Scott v. Harris,* 550 U.S. 372, 381 (2007); *Kentucky v. King,* 563 U.S. 452, 464 (2011) ("Whether an officer has used excessive force is analyzed under a standard of objective reasonableness.")  "An assault is an intentional act to do physical harm to the victim," while "[a] battery is an intentional act that causes a harmful or offensive bodily contact." *Evans–Reid v. District of Columbia,* 930 A.2d 930, 937 (D.C.2007).  The unreasonable use of force by a police officer may constitute an assault and battery under District of Columbia law.  *See Hundley v. District of Columbia,* 494 F.3d 1097, 1101 (C.A.D.C.2007).  Under the law, "[a] police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the [officer] reasonably believes to be necessary." *Scales v. District of Columbia,* 973 A.2d 722, 730 (D.C. 2009).  *See also Gabrou v. May Dep't Stores Co.,* 462 A.2d 1102, 1105, n. 4 (D.C. 1983), *citing Jackson v. District of Columbia*, 412 A.2d 948, 956 (D.C. 1980).  "[T]he test for qualified privilege in an assault and battery suit is both subjective and objective:  the officer must subjectively believe that he or she used no more force than necessary, but the officer's judgment is compared to that of a hypothetical reasonable police officer placed in the same situation." *Williams v. District of Columbia,* 268 F.Supp.3d 178 (D.D.C. 2017) (citing *District of Columbia v. Chinn*, 839 A.2d 701, 730 (D.C. 2003).  According to the *Williams* court, "[t]he objective piece of the qualified privilege analysis is 'similar to the excessive force standard applied in the Section 1983 context.'" *Williams,* 268 F.Supp.3d at 194 (citing *Dormu v. District of Columbia*, 795 F.Supp.2d 7, 27 (D.D.C. 2011)).  Thus, it is well settled that police officers may enjoy qualified immunity from constitutional and statutory claims

and/or a qualified privilege for an assault and battery claim filed against them. *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002).

The doctrine of qualified immunity shields an officer from liability for alleged excessive force insofar as the officer's conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *See Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Tahlequah v. Bond*, 595 U.S. 9 (2021) (per curiam), the Supreme Court reversed a denial of qualified immunity and clarified what constitutes "clearly established" for purposes of the doctrine. The Court reiterated: "We have repeatedly told courts not to define clearly established law at too high a level of generality. . . . It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Tahlequah*, slip op. at 3. (citations and quotations omitted). Similarly, in *Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021) (per curiam), the Supreme Court reversed another denial of qualified immunity, again cautioning courts against defining a clearly established right at too high level of generality. The court stated, "to show a violation of clearly established law, Cortesluna must identify a case that put Rivas-Villegas on notice that his specific conduct was unlawful." *Rivas-Villegas*, 595 U.S. at 6. Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). As a result, courts have "repeatedly… stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) *(per curiam)*. As explained in *Anderson v. Creighton*, 483 U.S. 635, 638 (1987):

> Permitting damages suits against government officials can entail substantial
> social costs, including the risk that fear of personal monetary liability and
> harassing litigation will unduly inhibit officials in the discharge of their
> duties. Our cases have accommodated these conflicting concerns by

> generally providing government officials performing discretionary functions
> with a qualified immunity, shielding them from civil damages liability as long
> as their actions could reasonably have been thought consistent with the rights
> they are alleged to have violated.

The Supreme Court has also explained that the trial court must consider two factors in analyzing the merits of a qualified immunity defense. *Pearson*, 555 U.S. at 231-32. The court must determine whether a plaintiff has asserted facts that show deprivation of a constitutional right. *Id*. at 232. The court should also decide whether the constitutional right at issue was clearly established at the time of the officer's alleged conduct. *Id*. The court may decide which question should be analyzed first in light of the particular circumstances of the case at hand. *Id*. at 235-36. Where a plaintiff alleges excessive force, a court's qualified immunity analysis turns on the "objective legal reasonableness of the officer's conduct," and the court analyzes the officer's actions employing the same "objective reasonableness" criteria adopted in *Graham v. Conner*, 490 U.S. 386, 396 (1989). *See also Oberwetter v. Hilliard*, 639 F.3d 545, 555 (D.C. Cir. 2011). "An officer will only be held liable" under the Fourth Amendment "if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions." *Rogala v. District of Columbia*, 161 F.3d 44, 54 (D.C Cir. 1999); *Moody v. City of Newport News*, *Va*., 193 F. Supp. 3d 530, 543 (E.D. Va. 2016) (quoting *Tennessee v. Garner*, 471 U.S. 1,  11 (1985)) ("[A] reasonable officer may use deadly force '[w]here the officer has probable cause to believe that [a] suspect poses a threat of serious physical harm, either to the officer or to others.'") Thus, for use of force cases, the reasonableness of the force used is to be determined by the "facts and circumstances of each particular case, including whether the suspect poses an immediate threat to the safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. And use of force includes assault and battery claims. *See Michele Hall v. District of Columbia,* 73 F.Supp3d 116, 121 (D.D.C. 2014).

Here, the plaintiffs' attempt to use criminal codes to support civil liability in this case should be rejected. *See* Compl. ¶ 87 ("Pursuant to D.C. Code § 22-404 any person who intentionally, knowingly or recklessly causes body injury to another has committed simple assault."); ¶ 88 ("Pursuant to § 5-123.02 an officer who uses unnecessary and wanton force in arresting or imprisoning any person shall be deemed guilty of assault and battery.")  The plaintiffs cannot show civil liability by merely pointing to criminal statutes.  But more importantly, reviewing the facts the plaintiffs asserted in the Complaint, in the light most favorable to them, Commander Bagshaw is entitled to qualified immunity and a qualified privilege for the shooting.  The plaintiffs allege that "[o]n or about the evening of July 16, 2022, off-duty Officer Bagshaw while dining at Bistro du Jour in Wharf area of Washington, DC was alerted to commotion taking place outside of the restaurant."  *See* Compl. at ¶ 11.   That's when Commander Bagshaw stepped outside the restaurant, he observed Mr. Wilson, who was armed, pointing a gun at an individual and he shot him.  *Id.* ¶¶ 19-20.  These facts support Commander Bagshaw's reasonable belief that Mr. Wilson was a threat and that shooting the armed Mr. Wilson was warranted. *See Patrick v. City of Aiken*, Civil Action No.: 1:16-cv-03496-JMC, 10 (D.S.C. Sep. 27, 2019) (""The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *See Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).")  And even if Commander Bagshaw was mistaken about the events as they unfolded, what he observed gave him probable cause to believe a citizen was in imminent danger of being shot and his actions were taken to stop what he perceived as a threat.  Qualified immunity operates to protect an officer from the sometimes "hazy border between excessive and acceptable force . . . and to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful."  *Saucier*, 533 U.S. at 206.  An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those

circumstances.  *Id.*  If the officer's mistake as to what the law requires is reasonable, however, the officer is nonetheless entitled to qualified immunity.  *Id.* (if an officer reasonably but mistakenly concludes that a suspect posed a threat of harm, "that a suspect was likely to fight back, for instance," the officer would be justified in using more [force] than in fact was needed).  Under the circumstances Commander Bagshaw faced, no reasonable jury could find that his actions were unreasonable.  Thus, the § 1983 claim against him (Count I) and assault and battery claim (Count IV) fail as a matter of law and dismissal of both counts is appropriate.

## VI.   The Plaintiff's Wrongful Death Act and Survival Act Claims Should Be Dismissed.

"In the District of Columbia, a  wrongful death action is derivative in nature and under both wrongful death and survival statutes, plaintiffs need a viable cause of action at time of death." *See  Nelson v. Am. Nat'l Red Cross,* 26 F.3d 193, 199 (D.C.Cir.1994).   Here, because the plaintiffs' Wrongful Death Act and Survival Act Claims (Counts II and V) are both derivative claims, neither can survive where there is no underlying cause of action.  Given the arguments raised above for dismissal of all counts in the complaint, dismissal of Counts II and V is appropriate because no viable claims can survive dismissal.

## VII.   The Plaintiffs Are Not Entitled to Punitive Damages.

The plaintiffs seek punitive damages from the District and Commander Bagshaw in this case. *See* Compl. ¶¶ 85, 90, 106.   *First*, punitive damages are not available against the District unless expressly mandated by statute, or in "extraordinary circumstances."  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981); *Butera v. District of Columbia,* 235 F.3d 637 (D.C. Cir. 2001); *Smith v. District of Columbia*, 336 A.2d 831, 832 (D.C. 1975).   The D.C. Circuit has interpreted "extraordinary circumstances" to include situations "where a jurisdiction's taxpayers are directly responsible for perpetrating the policies that caused [a] plaintiff's injuries," or where "a municipality or

its policymakers have intentionally adopted [an] unconstitutional policy that caused the damages in question." *Daskalea v. District of Columbia*, 261, 227 F.3d 433, 447 (D.C. Cir. 2000).

Here, the plaintiffs have failed to plead any facts to support any entitlement to punitive damages against the District.  *See* Compl.  Because no exceptional circumstances were pled in the Complaint such that the long-standing holdings against the imposition of punitive damages against the District should be abrogated, dismissal of the plaintiffs' punitive damage claim fails as a matter of law.

*Second,* the plaintiffs have also failed to plead facts showing entitlement to punitive damages against Commander Bagshaw.  *See* Compl.  "To sustain an award of punitive damages, Plaintiffs must [plead] [and] prove, by a preponderance of the evidence, that the defendant committed a tortious act, and by clear and convincing evidence that the act was accompanied by conduct and a state of mind evincing malice or its equivalent."  *See District of Columbia v. Jackson,* 810 A.2d 388 (D.C. 2002) (court reversed jury award of punitive damages award because it was unreasonable to find by clear and convincing evidence malice by the officers.)   Here, the facts as alleged by the plaintiffs have failed to show that Commander Bagshaw's actions were committed with malice.  *See* Compl. *generally*.  In fact, because the allegations show that Mr. Wilson pointed a gun towards an individual, Commander Bagshaw's decision to shoot, without more, is not enough to support a finding of malice.  Thus, dismissal of the punitive damage claim against Commander Bagshaw is appropriate.

**VIII.** **The District is Entitled to Summary Judgment on the Plaintiffs' State Law Claims.**

Under D.C. Code § 12–309, "an action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage."  *See* D.C. Code § 12–309(a).  And "[a] report in writing by the Metropolitan Police Department, in regular course

of duty, is a sufficient notice under this section." *Id.*  Courts strictly construe § 12–309 as it involves the District's waiver of its common law sovereign immunity.  *See Cornish v. District of Columbia*, 67 F. Supp. 3d 345, 370 (D.D.C. 2014).  "[D.C. Code § 12–309] does not permit equitable tolling." *E.g., Doe by Fein v. District of Columbia*, 697 A.2d 23, 29 (D.C. 1997).  "[U]nlike a statute of limitations, which, for example, can be tolled through the 'discovery rule,' the six-month clock for purposes of calculating timeliness under § 12-309 begins from the moment the plaintiff 'sustains the injury.'" *Cornish v. District of Columbia*, 67 F. Supp. 3d 345, 368 (D.D.C. 2014).  So too here.  The District's waiver of its common law sovereign immunity under § 12–309 cannot be tolled and the six-month notice provision applies.

Here, the plaintiffs did not notify the District, through the Mayor or the Office of Risk Management, under § 12-309 for the state law claims asserted in the Complaint against the District.  *See* Lana Craven Decl. ¶ 8, Ex. 1.  This failure is fatal to those claims asserted in Counts II and III and warrants the entry of judgment in the District's favor.

## CONCLUSION

For these reasons, the defendants request that the motion be granted.

October 2, 2023                          Respectfully submitted,

                                         BRIAN L. SCHWALB
                                         Attorney General for the District of Columbia

                                         STEPHANIE E. LITOS
                                         Deputy Attorney General
                                         Civil Litigation Division

                                         */s/ Patricia A. Oxendine*
                                         PATRICIA A. OXENDINE
                                         D.C. Bar No. 428132
                                         Chief, Civil Litigation Division, Section I

*/s/ Kerslyn D. Featherstone*
KERSLYN D. FEATHERSTONE
D.C. Bar No. 478758
Senior Assistant Attorney General
JAMES UNDERWOOD III
D.C. Bar No. 1765117
Assistant Attorney General
Office of the Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
(202) 724-6600; (202) 701-0255 (direct)
(202) 741-8924 (fax)
kerslyn.featherstone@dc.gov;
james.underwood@dc.gov

*Counsel for Former Interim Chief Ashan Benedict, the District of Columbia, and Commander Jason Bagshaw*

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| ESTATE OF LAZARUS WILSON<br>& TANYA WILSON,<br><br>      *Plaintiffs*,<br><br>   v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>      *Defendants*. | 2023-cv-1987-DLF |

## DEFENDANT DISTRICT OF COLUMBIA'S
## STATEMENT OF UNDISPUTED MATERIAL FACTS

Under Fed R. Civ. P. 56(c )(1), and Local Civil Rule 7(h)(1), the District submits this statement of undisputed material facts:

1.      The plaintiffs did not notify the District through the Mayor or the Office of Risk Management of their potential claims arising from the shooting of Lazarus Wilson by Commander Jason Bagshaw on July 16, 2022 at the D.C. Wharf, which resulted in Mr. Wilson's death.  *See* Lana Craven Declaration, Ex. 1.

Dated:  October 2, 2023

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Patricia A. Oxendine*
PATRICIA A. OXENDINE
D.C. Bar No. 428132
Chief, Civil Litigation Division, Section I

18

*/s/ Kerslyn D. Featherstone*
KERSLYN D. FEATHERSTONE
D.C. Bar No. 478758
Senior Assistant Attorney General
JAMES UNDERWOOD III
D.C. Bar No. 1765117
Assistant Attorney General
Office of the Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
(202) 724-6600; (202) 701-0255 (direct)
(202) 741-8924 (fax)
kerslyn.featherstone@dc.gov;
james.underwood@dc.gov

*Counsel for Former Interim Chief Ashan Benedict, the District of Columbia, and Commander Jason Bagshaw*

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| ESTATE OF LAZARUS WILSON & TANYA WILSON,<br><br>*Plaintiffs*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>*Defendants*. | 2023-cv-1987-DLF |

**<u>ORDER</u>**

Upon consideration of the Defendants Former Interim Chief Ashan Benedict, the District of Columbia, and Commander Jason Bagshaw's Motion to Dismiss, any opposition, the reply, and the entire record, it is by this _____ day of _____, 2023 hereby

**ORDERED** that the defendants' motion to dismiss is **GRANTED** for the reasons identified in the motion; and it is

**FURTHER ORDERED** that the complaint are hereby **DISMISSED with prejudice**; and it is**,**

**FURTHER ORDERED** that this case is closed; and it is,

**SO ORDERED**.

_____
Judge Dabney L. Friedrich
U.S. District Court for the District of Columbia

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| ESTATE OF LAZARUS WILSON & TANYA WILSON, | |
| *Plaintiffs*, | |
| v. | 2023-cv-1987-DLF |
| DISTRICT OF COLUMBIA, *et al.*, | |
| *Defendants*. | |

## <u>ORDER</u>

Upon consideration of the Defendant District of Columbia's Partial Motion for Summary Judgment, any opposition thereto, the reply, and the entire record, it is by this _____ day of _____ 2023, hereby

**ORDERED** that the District's motion is **GRANTED** for the reasons identified in the motion; and it is

**FURTHER ORDERED** that judgment is entered in favor of the District on the state law claims; and it is,

**SO ORDERED**.

_____
Judge Dabney L. Friedrich
U.S. District Court for the District of Columbia