### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

ESTATE OF LAZARUS WILSON                  :

& TANYA WILSON,                           :

     Plaintiff,                          :

v.                                        :          Case No.: 1:23-cv-01987-DLF

                                         :

DISTRICT OF COLUMBIA, *et al.,*           :

     Defendants.                         :

_____

### PLAINTIFFS' MEMORANDUM OF OPPOSING POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND PARTIAL MOTION FOR SUMMARY JUDGMENT

COMES NOW, your Plaintiffs, the Estate of Lazarus Wilson and Tanya Wilson

(hereinafter the "Plaintiffs"), by and through their undersigned counsel, hereby submits this

Memorandum of Opposing Points and Authorities in Support of Plaintiffs' Opposition to

Defendants' Motion to Dismiss and Partial Motion for Summary Judgment.

### LEGAL STANDARD

**I.  Motion to Dismiss Legal Standard**

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim the court must

construe the complaint in a light most favorable to the plaintiffs and must accept as true all

reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine*

*Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also*

*Schuler v. United States,* 617 F.2d 605,608 (D.C. Cir. 1979). Moreover, the court is not bound to

accept the legal conclusions of the non-moving party. *See Taylor v. FDIC*, 132 F.3d 753, 762

(D.C. Cir. 1997). When a motion to dismiss is based on the complaint, the facts alleged in the complaint control. *See Behrens v. Pelletier,* 516 U.S. 299, 309 (1996).

## II.  Motion for Summary Judgment Legal Standard

In evaluating the Government's Partial Motion for Summary Judgment, the court must determine, "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is material if it could alter the outcome of the suit under the substantive governing law." *Slack v. Washington Metropolitan Area Transit Auth*., 353 F. Supp. 3d 1, 6 (D.D.C. 2019) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 248 (1986)). In order for a party to show that a material fact is in dispute the party must (a) rely on the specific parts of the record, such as documentary evidence or sworn statements, or (b) "show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Thus, when the District Court is faced with a motion for summary judgment, the court many not assess credibility or weigh evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with "all justifiable inferences… drawn in his favor." *Anerson v. liberty Lobby, In.*, 447 U.S. 242,255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). "If material facts are at issue, or though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (quoting *Kuo-Yun Tao V. Feech*, 27 F.3d 635, 638 (D.C. Cir. 1994)) (internal quotation marks omitted). Summary judgment is only appropriate when "viewing all facts and inferences in the light most favorable to the nonmoving party… there is no genuine dispute as to any material fact." *Huff v. State Trooper Seth Cook,* 931 F.3d 307, 317 (4th Cir. 2019).

## ARGUMENT

**I.    Plaintiffs' §1983 claims against Commander Bagshaw and the District of Columbia are properly pled as the Complaint highlights policies, regulations, and orders issued by the District of Columbia that create the affirmative link between Commander Bagshaw's actions and the violations of Mr. Wilson's constitutional rights ultimately leading to the death of Mr. Wilson.**

**a. D.C. Municipal Regulation 6-A200.4 is the explicit policy in which Commander Bagshaw acted up to commit the constitutional violations asserted against Mr. Wilson.**

Count I of the Complaint asserts a claim against Commander Jason Bagshaw of the

Metropolitan Police Department of the District of Columbia for excessive force under 42 U.S.C.

§1983. Count VI of the Complaint asserts a claim against the District of Columbia for gross

negligence. The following facts are asserted throughout the Complaint:

1. Defendant, Commander Jason Bagshaw was at all relevant times, employed by the Metropolitan Police Department (hereinafter "MPD"), the primary law enforcement agency for the District of Columbia. *See* Compl. ¶7-8 and 41.

2. Members of MPD are held to always be on duty and required to comport with MPD protocols. *See Bauldock v. Davco Food Inc.,* 622 A.2d 28,28 (D.C. 1993) and D.C. Municipal Regulation 6-A200.4. *See* Compl. ¶42.

3. Officer Bagshaw held himself out to be an on-duty officer when he engaged and active crime. *See* Compl. ¶43.

D. C.  Municipal Regulation 6-A200.4 provides, "Members of the force shall be held to be

always on duty, although periodically relieved from the routine performance of it; shall always

be subject to orders from the proper authorities and to call from citizens; and the fact that they

may be technically off duty shall not be held as relieving them from the responsibility of take

proper police action in any matter coming to their attention requiring that action."

Defense counsel erroneously alleges that Plaintiffs only assert that the District is liable under § 1983, "because they failed to train Commander Bagshaw 'not to engage in activities with the public under his official capacity as a law enforcement officer while off-duty.' *See* Compl. ¶99." *See* Defendants Motion to Dismiss and Partial Motion for Summary Judgment at 8. As indicated above the District is liable under § 1983 because there is an affirmative link between the District's Municipal Regulation 6-A200.4 and the excessive force used against Mr. Wilson.

Like in *Monell v. Dep't of Servs. Of City of New York,* 436 U.S. 658, 98 S. Ct. 2018 (1978), Plaintiffs' assert that a municipality (in this case the District) has a matter of official policy that MPD officers "shall be held to always be on duty" and that this policy coupled with the District's failure to properly train and supervise officers caused their employee to violate Mr. Wilson's constitutional rights. D.C. Municipality Regulation 6-A200.4 is the moving force behind Commander Bagshaw's immediate spring into action despite being out for dinner and drinks with his wife.  Commander Bagshaw failed to call any on duty officers before engaging with the public as if he were an on-duty officer.

**b.   As in *McComb v. Ross*[1], The District's inadequate supervision and training of Commander Bagshaw was deliberately indifferent to an obvious need for supervision and training to address the risk that ill-trained and unsupervised officers are likely to commit constitutional violations thereby qualifying the District's deliberate indifference as a municipality policy or custom under § 1983.**

The Supreme Court of the United States, D.C. Court of Appeals, and this Honorable Court recognize that a municipality's deliberate indifference to the risk of constitutional violations can qualify as a policy or custom under § 1983. *See McComb v. Ross* 202 F. Supp. 3d 11 (D.D.C. 2016). A Municipal policy or custom can cause a constitutional violation when policymakers "knowingly ignore a practice that was consistent enough to constitute custom." *Id*

---

[1] *See McComb v. Ross,* 202 F. Supp. 3d 11 (D.D.C. 2016).

at 17 (citing *Warren v. District of Columbia,* 353 F.3d 36, 359 U.S. App. D.C. 179 (D.C. Cir

2004)) (quoting Monell, 436 U.S. at 694). "Additionally, a municipality may be liable when it

fails to respond to a need (for example, training of employees) in such a manner as to show

'deliberate indifference' to the risk that not addressing the need will result in constitutional

violations… Likewise, a municipality can be liable 'for inadequately supervising its employees if

it was deliberately indifferent to an obvious need for greater supervision." *Id.* at 17 (citing to

*Baker*, 326 F. 3d at 1306 (quoting *Canton*, 489 U.S. at 390) and (quoting *Kenley v. District of

Columbia,* 83 F. Supp. 3d 20, 34 (D.D.C 2015)).

     The District of Columbia, through its Chief of Police issue General Orders for the

Metropolitan Police Department to abide by. Pursuant to General Order 901.07:

> Members shall not use deadly force against a person unless the member reasonably
> believes that deadly force is immediately necessary to protect the member or
> another person from the threat of serious bodily injury or death, the member's
> actions are reasonable given the totality of the circumstances, ***and all other options
> have been exhausted or do not reasonably lend themselves to the
> circumstances… To the greater extent possible, members shall ensure that the
> use of deadly force presents no substantial risk of injury to innocent persons.
> Members shall not discharge their weapon into a crowd, as a signal for help, or
> as a warning shot.***

*See* Compl. ¶ 64 (quoting Go-RAR-§901.07 (Use of Force) General Order).

     The following facts are asserted throughout the Complaint:

1.   Officer Bagshaw did not order the two individuals and now robbery suspects,
   or Mr. Wilson and now the victim of an attempted robbery to drop their
   weapons prior to taking action as a law enforcement officer. *See* Compl. ¶ 22.

2.   Officer Bagshaw ultimately breached his duty to Mr. Wilson to use only
   reasonable force necessary to de-escalate, gain control of the situation, or
   prevent grave bodily harm while acting under the MPD policy that officers are

always on duty and therefore must comply with MPD protocols. *See* Compl. ¶ 48.

3. MPD's policy of holding an officer always on duty encouraged Officer Bagshaw to engage in an ongoing robbery and discharge his MPD service issued firearm despite being in plain clothes, and out for dinner with his wife. Officer Bagshaw engaged with Mr. Wilson under the color of state law, and therefore, MPD and the District's failure to train and supervise Officer Bagshaw provides the affirmative link between the government's actions and Mr. Wilson's death. *See* Compl. ¶ 49.

4. MPD and the District failed to train or supervise Officer Bagshaw according to police trainings and protocol pursuant to General Order 901.07 of the Metropolitan Police for the District of Columbia. *See* Comp. ¶ 50.

5. The Metropolitan Police Department's policy to hold officers as always on duty permitted Officer Bagshaw to jump onto action despite being out to dinner with his wife and unidentifiable as an officer. Officer Bagshaw was armed with his service weapon and discharged it without any supervision on training as it pertains to the actions of an off-duty officer still in possession of their service weapon. The failure for MPD and the District to train or supervise perpetually, no -matter their duty status activates a duty for MPD and the District to train and adequately supervise off=duty officers who carry service issued weapons.  *See* Compl. ¶ 102.

6. This failure to train or supervise off-duty officers carrying service issued weapons is a failure for MPD and the District to exercise even slight care that shocks fair-minded men. *See* Compl. ¶ 104.

7. MPD and the District's failure to train or supervise the "always on duty" officer was the proximate and actual case of the death of Mr. Wilson, as they allowed Officer Bagshaw to act under the color of state law and violate the Fourth Amendment of the Constitution. *See* Comp. ¶ 105.

Like in *McComb* the Plaintiffs asserts that MPD was deliberately indifferent in its failure to train, supervise, and discipline Commander Bagshaw when he was tasked to act as on-duty officer while being off-duty and sprang7 into action drawing his service weapon and utilizing deadly force. This Honorable Court can reasonably infer that the District knew or should have known the risk that Officers would violate the constitutional rights of others when off-duty with their service weapons and authority to act as on-duty officers when interacting with the public even when they're off-duty and not subject to any supervision.

Additionally, as this case proceeds to discovery phase of litigation Plaintiffs will have the proper opportunity to obtain Commander Bagshaw's personnel file as an officer along with similar reports of excessive force allegations. In discovery Plaintiffs will also have the opportunity to obtain additional correlating evidence to establish that the District knew or should have known about the risk that Commander Bagshaw would violate the constitutional rights of its citizens. Nevertheless, the facts already known and established within the Complaint assert that MPD has a General Order in place, failed to supervise or train Commander Bagshaw regarding his conduct and state of mind to implement the General Order, and that Commander

Bagshaw was in possession of his service weapon while off-duty. Plaintiff is barred form gaining additional information regarding Commander Bagshaw prior to a discovery order in this case.

Pursuant Fed. R. Civ. P. 12(b)(6) and this Court's analysis to, "assume the truth of all well-pleaded factual allegations and construe reasonable inference from those allegations in Plaintiff's favor." *Nurriddin v. Bolden,* 818 F.3d 751m 756 (D.C. Cir 2016). Plaintiff through counsel has far exceeded its burden by properly asserting and pleading a §1983 action against the District.

II. **As a matter of law, the District of Columbia recognizes the claim of gross negligence when gross negligence is a specific element of a claim or defense, or for equitable reasons. Plaintiffs' gross negligence claims are recognizable under the law for equitable purposes.**

Traditionally, this court classified two categories when gross negligence applies. *Hernandez*, 845 F. Supp. 2d 112, 116 (D.D.C. 2012). The first category applies to situations where gross negligence is specific element of a claim or defense. *Id.* The second category applies to instances in which equitable reasons such as public policy demand relief. *Id*. In the District of Columbia a plaintiff may raise gross-negligence claims as a matter of public policy to discourage aggravated wrongs. *See Carleton v. Winter*, 901 A.2d 174, 181 (D.C. 2006). Specifically, parties cannot agree to limit liability if the conduct of one party is grossly negligent or worse. *Id.* (citing *Baker v. Roy H. Haas Assocs.,* 97 Md. App. 692 A.2d 1321, 1317 (Md. 1993) (citing *Winterstein v. Wilcome,* 16 Md. App. 130, 293 A.2d 821, 824 Md. 1972). (recognizing that exculpatory clauses will not be enforced "when a party to the contract attempts to avoid liability for intentional conduct of harm caused by reckless, wanton, or gross behavior"). The court recognizes that if parties are permitted to limit negligent liability that in the pursuit of justice there must be guardrails to ensure one party does not take an unjust advantage over the other.

In the present case, defense counsel asserts that there is no place for defendants to be held liable under a gross negligence theory. However, this court recognizes gross negligence when one's actions are greater than ordinary negligence and public policy is affected. Therefore, Plaintiffs claims for gross negligence do not fail as a matter of law.

The following facts are asserted throughout Plaintiffs Complaint as it pertains to gross negligence claims against the defendants:

1. Officer Bagshaw did not comply with his police trainings and protocol pursuant to General order 901.07 for the Metropolitan Police for the District of Columbia. *See* Comp. ¶ 63.

2. Among many other reasons, Officer Bagshaw failed to exhaust any other means of de-escalation or pursuit of arrest as it lends itself to the situation. Given the fact he was in plain clothes and no one in the incident ever saw or acknowledged his presence on the scene, significantly his presence as a law enforcement officer. At minimum, plain clothes Officer Bagshaw pursuant to his training sho9uld have announced himself and provided verbal commands prior to any further engagement. Officer Bagshaw also shot and killed the innocent because he failed to use the judgment of a reasonably prudent officer or merely follow MPD protocols. *See* Compl. ¶ 65.

3. Officer Bagshaw deprived Mr. Wilson of his life by using excessive force and unreasonable force when he shot Mr. Wilson without warning or announcement. *See* Compl. ¶ 67

4. Officer Bagshaw failed to properly assess the situation due to his rash decision making after dinner and drinks with his wife at a nearby restaurant. *See* Compl. ¶ 68.

5. D.C. Code §5-123.02 establishes a legal duty for MPD officers to refrain from using unnecessary and wanton severity in arresting or imprisoning members of the public. General Order 901.07 establishes a legal duty for Members of MPD to only deploy deadly force if it is immediately necessary to protect themselves or another person from serious bodily harm or death and the members actions are reasonable given the totality of the circumstances, and all other options have been exhausted or do not reasonably lend themselves to the circumstances. *See* Compl. ¶ 77-78.

6. Officer Bagshaw while engaging with the public in his role as an officer acted grossly negligent when he decided to engage in plain clothes, without announcement, without commands, without warning, and without the use of any de-escalation tactics, discharged his service weapon killing Mr. Wilson. Officer Bagshaw failed to conduct himself in a dutiful manner to refrain from the use of unnecessary and wanton force when imprisoning a civilian suspect. Officer Bagshaw failed to exhaust all other options given the totality of the circumstances and caused the death of a robbery victim. Officer Bagshaw's conduct grossly deviated from his legal duty and standard of care for a reasonable prudent police officer when he drew his firearm without warning. *See* Compl. ¶ 79-82.

In the alternative, if this court finds that Plaintiffs claims for gross negligence do not rise to the level of gross negligence, like in *Hernandez* a claim for regular negligence should proceed in the place of gross negligence claims for Counts II, III, V, and VI.

III.   **The Metropolitan Police Department cannot be sued separate from the District of Columbia and therefore Plaintiffs properly brought suit against Metropolitan Police Department Commander Bagshaw and the District of Columbia.**

Metropolitan Police Department is a *non sui juris*, meaning it cannot be sued separate from the District of Columbia. *See, e.g., Allen-Brown v. District of Columbia,* 54 F. Supp. 3d 35, 40 (D.D.C. 2014). Additionally, suing a Chief of Police in his official capacity is an appropriate alternative to "pleading an action against an entity of which an officer is an agent." *See Monell v. N.Y. Dep't of Social Services,* 436 U.S. 658, 690 (1978). "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt,* 469 U.S. 471027 (1985).

As defense counsel acknowledges, an employer can be sued on the basis of vicarious liability which includes the theory of *respondeat superior*. *See Convit v. Wilson,* 980 A.2d 1104, 1114 (D.C. 2009). Therefore, in order to hold not only Commander Bagshaw liable for his actions, but also his employer, the District of Columbia is subject to this lawsuit as the proper defendant. *See Sampson v. D.C. Dep't of Corr.,* 20 F. Supp. 3d 282, 285 (D.D.C. 2014). Plaintiffs concede that Count VII is not recognized as a standalone claim, however all named defendants are proper defendants to this action given the caselaw.

IV.   **The Plaintiffs' Official-Capacity Lawsuit is correctly pled because a suit against a state official in his or her official capacity is a suit against the official's office.**

An official sued in his or her official capacity is a suit against the state office. *See Monell* at 690. "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt,* 469 U.S. 471027 (1985).

For these reasons plaintiffs' counsel concedes that Counts VI and VII should be dismissed against the Interim Chief Bendict only.

**V.     Commander Bagshaw is not entitled to qualified immunity because there are genuine disputes to material facts and his conduct violated Lazarus Wilson's rights that were clearly established at that that.**

    **a.     Defendants failed to comply with LCvR 7(h) and Plaintiffs highlight material facts that are in dispute regarding negligence and use of force which are matters for the jury to decide.**

When considering whether a case is ripe for a determination of qualified immunity the court must first find when viewing all the facts and inferences in the light most favorable to the nonmoving party that there is no genuine dispute as to any material fact. This is an important step because if there are disputes of material facts the court cannot circumvent the role of the fact finder. The court recognizes that a qualified immunity determination for excessive force claims is a necessarily fact-bound inquiry. *Bushrod v. District of Columbia,* 521 D. Supp. 3d 1, 21 (D.D.C. 2021) (citing *Louis v. District of Columbia* 59 F. Supp. 3d 135, 143 n.3 (D.D.C. 2014). Even where there are *material* facts in dispute the Court's role is to "determine the relevant set of facts" by "drawing all inferences in favor of the nonmoving party *to the extent supportable by the record,*" at which point the court must determine reasonableness as a matter of law. *Id.* (quoting *Scott v. Harris,* 550 U.S. 372, 381 n.8 (2007); *See also Elshazli v. District of Columbia,* 415 F. Supp. 3d 20, 27 (D.D.C. 2019) (ruling officers entitled to qualified immunity on excessive force claims where *video* evidence undermined plaintiff's factual allegations.)

Due to the fact-bound inquiry a determination of qualified immunity in this case entails this Court requires under Local Rule 7(h) that each party moving for summary judgment must submit a statement of material facts as to which the moving party contends there is no genuine issue which shall include references to the parts of the record relied on to support the statement.

LCvR 7(h); *See also Id.* at 22.  Defendants failed to comply with LCvR 7(h) leaving this court to presume that defense counsel believes there is no genuine issue to any of the facts. Whereas, Plaintiffs' counsel indicated in sections I and II of this Memorandum the facts within the complaint that are material genuine issues in dispute and therefore this case at this point immunity cannot be properly determined. This case fails to have any video evidence on the record or obtained by either party as many other cases have when deciding on qualified immunity at this point in the case. *See Elshazli,* 415 D. Supp. 3d at 27; *Kelly v. Gaton,* 2021 U.S. Dist. LEXIS (D.D.C. Nov. 15 2021); and *Scott,* 550 U.S. at 381; and *Burney v. Suggs,* 630 F. Supp. 3d 20 (D.D.C. 2022).

 As no video evidence of the shooting has been introduced on the record this court only has the Complaint and these preliminary motions to base an immunity decision. Plaintiffs raise genuine disputers of fact as it pertains to the negligence and use of force issues in this case. It is well established that credibility determinations, the weighing of evidence, and drawing legitimate inferences from the facts are **jury** functions, not those of a judge at summary judgment. *See Ingram v. Shipman-Meyer,* 241 F. Supp. 3d 124, 137 (D.D.C. 2017) (quoting *Barnett v. PA Consulting Grp. Inc.,* 715 F.3d 354, 358 (D.C. Cir. 2013) (internal quotation marks omitted)).  Furthermore, even if this court finds that there are no genuine disputes to material facts Commander Bagshaw's actions still fail to be covered under qualified immunity.

 **b. Commander Bagshaw's actions violated Lazarus Wilson's constitutional and statutory rights to be secure in his person, to be free against unreasonable seizures.**

 A claim of excessive force turns on the Fourth Amendment "objective reasonableness" standard. Unlike in most other excessive force analysis Commander Bagshaw was off-duty and did not have the "right to make an arrest or investigatory stop [which] necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v.*

*Connor,* 490 U.S. 386, 396 (1989). At the time Commander Bagshaw took his action he was unidentifiable as an officer and it was unknown to Lazarus Wilson that he was even on the scene. Commander Bagshaw was out to dinner with his wife. Nonetheless, in order to determine if Commander Bagshaw's actions were reasonable given what is currently on the record the court considers the following: (i) the severity of the crime at issue; (ii) whether Mr. Wilson poses and immediate threat to the safety of the officers or others, and; (iii) whether Mr. Wilson was actively resisting arrest or attempting to evade arrest by flight. *Id.*

### i. The severity of the crime at issue

At the time Commander Bagshaw discharged his weapon Mr. Wilson was not actively perpetrating a crime. If Commander Bagshaw provided a reasonable assessment of the scene prior to the use of deadly force he would have assessed the allegations set forth in the Complaint. The Complaint sets forth that Mr. Wilson and his friend were in the Wharf area of Washington, DC waiting to purchase a watch from a private citizen. While Mr. Wilson and his friend were waiting to purchase the watch two people approached Mr. Wilson and his friend. Mr. Wilson recognized one of the individuals as the person selling him the watch. Once the tow individuals approached Mr. Wilson and his friend, the friend was grabbed and held at gunpoint. Mr. Wilson began screaming and ordering the unknown individual to let his friend go and simultaneously the second individual began to attack Mr. Wilson. During the attack Mr. Wilson retrieved his firearm in self-defense. At or around the same time Commander Bagshaw left the restaurant he was dining at and from a distance without being detected by anyone on the scene fired two shots to the back of Mr. Wison rendering him dead shortly thereafter. Commander Bagshaw's failure to assess, warn, and/or announce himself prohibited Commander Bagshaw from even realizing that

Mr. Wilson was not committing a crime. functioning Mr. Wilson had not committed any crime at the time he was shot.

### ii.    Immediate threat to the safety of officers or others

Mr. Wilson holding a firearm did pose a threat to the individuals who were attacking him. However, Mr. Wilson never posed an immediate threat to officer safety as Commander Bagshaw never even identified himself and a gun was never pointed towards him. No acts of violence or aggression were used against Commander Bagshaw. Mr. Wilson also never discharged his firearm nor did he point it towards any members of the general public other than the one who was attacking him. Pursuant to D.C. Code §22-4503.01 when a firearm is discharged during a legitimate self-defense claim the party discharging the firearm cannot be charged with unlawful discharge of a firearm. So even if Mr. Wilson discharged his weapon under the law, he would be immune from any liability. Furthermore, Commander Bagshaw shot Mr. Wilson from behind further evidencing that Mr. Wilson did not pose an immediate threat to any officers. Commander Bagshaw's failure to assess and failure to provide any command or warning caused Bagshaw to overlook the actual perpetrators who were the actual risk to the safety of Mr. Wilson, Mr. Wilson's friend and others.

### iii.    Actively resisting arrest or attempting to flee

Mr. Wilson was never made aware of a police presence since Commander Bagshaw failed to warn or announce himself. Mr. Wilson was not attempting to flee or actively resisting arrest. Mr. Wilson never had the opportunity to surrender to police assistance or not because Commander Bagshaw acted without reason or thought.

Overall, under the *Graham* factors for objective reasonableness arguably all three of the factors weigh in favor of the plaintiff because he was not actively resisting, he has a lawful justification for pointing a firearm at an individual and this firearm was never discharged nor was it pointed at any law enforcement officers, also Mr. Wilson never committed a crime. It is also important that Mr. Wilson was shot from behind. A reasonable jury could find that Commander Bagshaw's actions and use of force were excessive.

**c.   Lazarus Wilson's rights were clearly established at the time Commander Bagshaw shot and killed Lazarus Wilson.**

Commander Bagshaw shot Mr. Wilson twice from behind in plain clothes without any announcement or warning. Mr. Wilson was not displaying any use of force towards Commander Bagshaw. Commander Bagshaw was a far enough distance away from Mr. Wilson that no one on the scene realized Officer Bagshaw's presence until Mr. Wilson was shot. Given the facts on the record at this point it is clear to any reasonable officer that Commander Bagshaw's conduct was unlawful in this situation.

Commander Bagshaw's failure to assess and warn Mr. Wilson prior to firing his service weapon while off duty violated Mr. Wilson's clearly established right free from an unreasonable seizure at the time Commander Bagshaw discharged his weapon. It is clearly established that that, "deadly force may only be used by a police officer when, based on a ***reasonable assessment***, the officer or another person is threatened with the weapon." *See Cooper v. Sheehan,* 753 F.3d 153, 159 (4th Cir. 2013). Commander Bagshaw failed to provide any reasonable assessment of the situation prior to discharging his weapon. Commander Bagshaw discharged his weapon without warning and without being in a close enough proximity to the scene to realize Mr. Wilson's friend was being held by the true perpetrators at gun point. If

Commander Bagshaw attempted to warn anyone on the scene of his presence, he would have been able to assist Mr. Wilson against his attackers rather than killing him. Commander Bagshaw's failure to assess and warn could have resulted in him killing a fellow plain clothes officer and for these reasons it makes sense why it is clearly established than an officer cannot discharge his weapon without a reasonable assessment. Furthermore, what is to be considered as reasonable is for the jury to decide as the fact finders in this case.

Additionally, it is clearly established that Mr. Wilson had a right to be free from this unreasonable seizure at the time Commander Bagshaw discharged his weapon because Mr. Wilson never raised his gun toward the officers and he was never warned prior to Commander Bagshaw discharging his weapon. Before an officer may use deadly force, he should give a warning if it is feasible. *See Hensley v. Price,* 876 F.3d 573, 584 (4th Cir. 2017) (Citing *Tennessee v. Garner,* 471 U.S. 1, 11-12 (1985). Even if a suspect threatens an officer with a weapon if it is feasible some warning should be given. *Id.*   An officer does not possess the unfettered authority to shoot a member of the public simply because that person is carrying a weapon. *Cooper* at 159.

Furthermore, pursuant to General Order 901.07 Commander Bagshaw was to "first attempt to defuse the situation through advice, warning, verbal persuasion, tactical communication, or other de-escalation techniques." Commander Bagshaw failed to attempt any de-escalation tactics when it was feasible to do so. Commander Bagshaw failed to provide any reasonable assessment of the situation. A simple warning would have changed the deadly outcome of this situation. Commander Bagshaw was a safe distance away from the scene and Mr. Wilson was the victim of an ongoing crime that Commander Bagshaw failed to make himself privy to before using deadly force.

Significantly, it is important to note that whether or not a right is clearly established at the time the force is used does not need to be identified with cases that have materially similar facts, but only have to show that the state of law at the time of incident gave the officer fair warning that his alleged misconduct was unconstitutional. *Johnson v. District of Columbia,* 381 U.S. App. D.C. 351, 358 (quoting *Hope v. Pelzer,* 536 U.S. 730, 241 (2002)). All the cases cited and the General Order provide that a reasonable assessment of the scene and warning should have been provided and the failure to do so is a violation of Mr. Wilson's clearly established rights at that time. Additionally, the case law clearly establishes that the possession of a firearm without any acts of aggression towards officers and failure to warn are also violate weigh against any grant of qualified immunity for Commander Bagshaw.

Wherefore, Plaintiffs §1983 claim and assault and batter claim against Commander Bagshaw should not fall under qualified immunity because it is clearly established that Commander Bagshaw had to warn Mr. Wilson before discharging his weapon and that Commander Bagshaw did not provide a reasonable assessment of the scene prior to taking deadly force action. Additionally, a reasonable juror could find that it was more than feasible for Commander Bagshaw to warn Mr. Wilson before discharging his weapon and that Commander Bagshaw failed to reasonably assess the scene prior to taking action and the deadly force action taken was unreasonable given the facts and circumstances. Lastly, there are genuine disputes as to material fact regarding whether or not Commander Bagshaw attempted to warn or not, whether Mr. Wilson was committing a crime, and if Mr. Wilson posed a threat to Commander Bagshaw or the public. Thus, qualified immunity does not apply and Counts I and IV should not be dismissed.

**VI.     Plaintiffs have asserted viable causes of actions to support an action for wrongful death and a survival action.**

The Plaintiffs have viable survival and wrongful death actions for all the reasons listed in the complaint and throughout this Memorandum. Commander Bagshaw used excessive force against Mr. Wilson, and committed assault and batter against Mr. Wilson. Furthermore, Commander Bagshaw is not entitled to qualified immunity for his actions. Therefore, Counts II and V should not be dismissed.

**VII.    Plaintiffs are entitled to punitive damages against Officer Bagshaw because his conduct and state of mind rose the level of malice or its equivalent.**

Commander Bagshaw's conduct was in violation of his protocols as an officer. Commander Bagshaw was off-duty and out for dinner and drinks with his wife at the time of the shooting. Once plaintiffs' counsel is afforded the opportunity to review Commander Bagshaw's personnel records along with video surveillance footage of the incident the record will reflect that not only did Commander Bagshaw's conduct evidence a malice and rash intent, but so will his history. Plaintiffs' counsel concedes that the District is not liable for punitive damages.

**VIII.   The District is not entitled to Summary Judgment on State law claims because the Plaintiffs noticed the district within six months of the injury and damage sustained.**

Pursuant to D.C. Code § 12-309 Plaintiffs noticed this action in writing to the Mayor of the District of Columbia. See Plaintiffs Notice of Intent to Sue Letter along with the receipt of service attached as **Exhibit 1**. Wherefore Counts II and III do not warrant an entry of judgment in the defendant's favor.

## CONCLUSION

For these reasons, plaintiffs request that defendants motion to dismiss and for partial summary judgement is denied, or in the alternative leave to amend the complaint, and request for a hearing.

Date November 15, 2023                                      Respectfully Submitted,


/s/ *Andrew O. Clarke*

**Andrew O. Clarke. Esquire**
DC BAR NO.: 1032649
**A. CLARKE LAW, PLLC**
163 Waterfront Street, Suite 440
National Harbor, MD 20745
T: (202)780-9144
F: (202)747-5827
a.clarke@aclarkelaw.com
*Counsel for Plaintiff*


## CERTIFICATE OF SERVICE

I certify that on November 15, 2023, a true copy of the foregoing was electronically filed and served on counsel of record for the defendants via CM/ECF filing system.


*/s/ Andrew O. Clarke*

*Attorney for Plaintiff*