UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF LAZARUS WILSON & TANYA WILSON,<br><br>*Plaintiffs,*<br><br>v.<br><br>THE DISTRICT OF COLUMBIA, *et al.*,<br><br>*Defendants.* | 2023-cv-1987-DLF |

**DEFENDANTS' REPLY**

Defendants [Former] Interim Chief of Police Ashan Benedict, District of Columbia (the District), and Metropolitan Police Department Commander Jason Bagshaw's reply to the plaintiffs' opposition to their motion to dismiss and the District's partial motion for summary judgment.

**INTRODUCTION**

The plaintiffs have not satisfied their burden to stave off dismissal of this action with prejudice. *First,* no viable a municipal liability claim has been raised against the District under 42 U.S.C. § 1983. *Second*, Commander Bagshaw is entitled to qualified immunity on the constitutional claim of excessive force and a privilege for the common law claim of assault and battery. *Third,* no statute authorizes the gross negligence claim nor is that claim supported by public policy. *Fourth,* because the plaintiffs' Wrongful Death Act and Survival Act claims are derivative claims, they are not actionable since no underlying claim may proceed. Similarly, without an underlying claim, punitive damages are not available. *Fifth,* the official-capacity suit against Chief Benedict cannot be maintained. *Finally,* the District

withdraws its argument raised under D.C. Code § 12-309.  While no letter was sent to the Office of Risk Manager, the plaintiffs' letter addressed the Mayor about their potential claims at the very least creates a factual dispute on the notice issue.

**ARGUMENT**

I. **The Plaintiffs' § 1983 Municipal Liability Claims Against the District Cannot be Maintained.**

The plaintiffs' argument that "the District is liable under § 1983 because there is an affirmative link between the District's Municipal Regulation 6-A200.4 and the excessive force used against Mr. Wilson" because the District has an "official policy that MPD officers "shall be held to always be on duty" and this policy "is the moving force behind Commander Bagshaw's immediate spring into action despite being out for dinner and drinks with his wife" should be rejected.  *See* Pl.'s Opp'n. at 4 [12].  And their reliance on *McComb v. Ross*, 202 F. Supp. 3d 11 (D.D.C. 2016), is misplaced.  According to Jackson, "[l]ike in McComb the Plaintiffs asserts that MPD was deliberately indifferent in its failure to train, supervise, and discipline Commander Bagshaw when he was tasked to act as on-duty officer while being off-duty and sprang into action drawing his service weapon and utilizing deadly force" and that "[t]his [] Court can reasonably infer that the District knew or should have known the risk that Officers would violate the constitutional rights of others when off-duty with their service weapons and authority to act as on-duty officers when interacting with the public even when they're off-duty and not subject to any supervision." *See* Pl.'s Opp'n. at 4-7.  None of these arguments hold merit.  *First,* Municipal Regulation 6-A200.4 did not lead to Mr. Wilson's death.  It provides:

> Members of the force shall be held to be always on duty, although periodically relieved from the routine performance of it; shall always be subject to orders from the proper authorities and to call from citizens; and

>the fact that they may be technically off duty shall not be held as relieving them from the responsibility of taking proper police action in any matter coming to their attention requiring that action.

D.C. MUN. REGS. tit. 6A, § A200.4.  Other than assert legal conclusions, the plaintiffs fail to allege any facts to show that the District knew or should have known that 6A § A200.4 would cause them constitutional harm.  Indeed, the plaintiffs have made *no* showing of other situations that are analogous to the facts in and circumstances of this case that serve to put the District on notice of the risk of harm as alleged.  *See* Pl.'s Opp'n.  And the plaintiffs have pointed to no facts showing that the District caused their constitutional harm by giving officers the authority to take proper police action when necessary.  *Id.*

*Second,* the facts in *McCombs* are totally different than the facts asserted by the plaintiffs.  In *McCombs,* to support his *Monell* claim, the plaintiff alleged that the officers violated his constitutional rights when they repeatedly probed his rectum — an unlawful body cavity search — with their fingers in search for contraband without probable cause to do so.  According to the *McCombs* plaintiff, "Officers Ross and Culver have an *extensive history of complaints* involving similar conduct in the 33 months prior to the incident involving plaintiff McComb, and listed eleven prior citizen complaints against them." *McComb*, 202 F. Supp.3d at 15, emphasis added.  He further alleged that "[o]nly after the United States Attorney's Office began looking into the incident involving plaintiff McComb and called MPD's attention to the pattern of complaints against officers Ross and Culver did MPD recognize the need for additional training.'" *Id.* at 17.  Based on the asserted allegations raised by the *McCombs* plaintiff, and in deciding the municipality claim, the *McCombs* court determined that "the primary question is whether [the plaintiff] has sufficiently pled 'a direct causal link between a municipal policy or custom and the

3

alleged constitutional deprivation.'" *Id., citing City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The *McComb* court explained the various ways in which a custom, practice or policy could cause a constitutional deprivation and decided *McCombs* had sufficiently pleaded municipal liability. *Id.* at 17. The court reasoned that "[w]here plaintiff has alleged <u>numerous</u> instances of prior misconduct, similar to the misconduct alleged here, the Court can plausibly infer that the District had actual or constructive knowledge of the risk that the defendant officers would violate the constitutional rights of its citizens in this manner." *McComb,* 202 F. Supp. 3d at 18, *citing Singh v. District of Columbia,* 881 F.Supp.2d 76, 87–88 (D.D.C.2012) (finding "the District would have been aware of the risk of constitutional violations[] where plaintiff reported police harassment on five separate occasions"). *Cf. Blakeney v. O'Donnell*, 117 F.Supp.3d 6, 12 (D.D.C.2015) (dismissing plaintiff's municipal liability claim where complaint alleged only one instance of police misconduct—his own encounter with the defendant officers).

Here, unlike the *McCombs* plaintiff, but like the *Blakeney* plaintiff, the plaintiffs only identified one instance of misconduct allegedly committed by Commander Bagshaw and, as explained above, the facts in this case do not mirror the facts in *McCombs*. As such, this Court should follow the holding in *Blakeney* and dismiss this action.

*Finally,* as the court in *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 658 (1978), makes clear, there is no *respondeat superior* liability under § 1983. Rather, the municipal policy, practice, or custom must be the "moving force" behind the alleged constitutional injury. *Id.* Because the District cannot be held liable under *Monell* for the allegations as raised against Commander Bagshaw, the plaintiffs' municipal liability claim fails.

## II.     Commander Bagshaw is Entitled to Qualified Immunity/Privilege.

*First*, Commander Bagshaw was not required to comply with LCvR 7(h) in seeking *dismissal* of plaintiffs' § 1983 claim (Count I) or assault and battery claim (Count IV). *See* Pl.'s Opp'n at 12-13. LCvR 7(h) provides that "each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement." Here, Commander Bagshaw does not seek summary judgment. *See* Defs' Mot. at 10-13. Rather, Commander Bagshaw seeks dismissal of Count I and Count IV; thus, there is no requirement that Commander Bagshaw submit a statement of material facts as alleged by the plaintiffs. As such, the plaintiffs' argument does not warrant denial of Commander Bagshaw's requested relief.

*Second*, the plaintiffs' excessive force claim under the Fourth Amendment fails as illustrated by the standards explained by the court in *Graham v. Conner*, 490 U.S. 386, 396 (1989). While the plaintiffs argue that in determining whether Commander Bagshaw's actions were reasonable, the *Graham* court requires this Court to consider: " (i) the severity of the crime at issue; (ii) whether Mr. Wilson poses and immediate threat to the safety of the officers or others, and; (iii) whether Mr. Wilson was actively resisting arrest or attempting to evade arrest by flight," the plaintiffs fail to recognize that the *Graham* court explicitly states that, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *See Graham,* 490 U.S. at 396. And in conducting the analysis set forth under *Graham,* the factors weigh in Commander Bagshaw's favor. While the plaintiffs argue Mr. Wilson did not pose a threat and Commander Bagshaw did not announce himself, these are

conclusions reached by counsel, and do not show that Commander Bagshaw behaved unreasonably, or utilized unreasonable force when he took police action. *See* Pl.'s Opp'n. at 14-16. The seriousness of the crime as perceived by Commander Bagshaw is evident by the allegations raised in the complaint. It is undisputed that Mr. Wilson was armed with a weapon that he had pointed at another individual (a serious crime) when Commander Bagshaw observed the interaction. *See* Compl. at ¶ 11 ("On or about the evening of July 16, 2022, off-duty Officer Bagshaw while dining at Bistro du Jour in Wharf area of Washington, DC was alerted to commotion taking place outside of the restaurant"); *Id.* ¶¶ 19-20 (When Commander Bagshaw stepped outside the restaurant, he observed Mr. Wilson, who was armed, pointing a gun at an individual and he shot him.). An individual armed with a weapon (a gun) pointed towards another person poses an immediate threat. Under these circumstances as described by the plaintiffs, no reasonable jury could find that Commander Bagshaw's actions were unreasonable and dismissal of the plaintiffs' § 1983 claim (Count I) is appropriate. *Rogala v. District of Columbia*, 161 F.3d 44, 54 (D.C Cir. 1999); *Moody v. City of Newport News, Va.*, 193 F. Supp. 3d 530, 543 (E.D. Va. 2016) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)) ("[A] reasonable officer may use deadly force '[w]here the officer has probable cause to believe that [a] suspect poses a threat of serious physical harm, either to the officer or to others.'"). Similarly, dismissal of the plaintiffs' assault and battery claim (Count IV) is warranted. *Id.*

### III.     The Plaintiffs' Gross Negligence Claims Fail.

In support of their gross negligence claims proceeding absent statutory authorization, the plaintiffs cite *Carleton v. Winter*, 901 A.2d 174, 181 (D.C. 2006), and argue that gross negligent claims may proceed "where gross negligence is specific element of a claim or

defense," and when raised as "a matter of public policy to discourage aggravated wrongs." *See* Pl.'s Opp'n at 8.  However, the analysis in *Carleton* pertains to contract law.  And the *Carleton* court explained that "[c]ourts do not enforce agreements to exempt parties *from tort liability* if the liability results from that party's own gross negligence, recklessness, or intentional conduct."). *Carleton*, 901 A.2d 137.  The *Carleton* court did not permit the plaintiffs to move forward with their gross negligence claims, but rather, limited the enforceability of contracts that attempt to release parties who engage in reckless conduct from liability.  *Id*.  The question of whether a plaintiff can proceed under a theory of gross negligence in the District of Columbia has been definitively answered by the court in *Hernandez v. District of Columbia,* 845 F. Supp. 2d 112, 115 (D.D.C. 2012).  The *Hernandez* court provides that "[t]he law of the District of Columbia does not recognize degrees of negligence," unless there is statutory authority authorizing it.  *Id*.  Here, there is no statutory authority which allows for pleading gross negligence for the claims asserted by the plaintiffs.  Thus, dismissal of the gross negligence claims asserted in Counts II, III, V and VI is appropriate.  And the plaintiffs' public policy argument fails.  Unlike the plaintiff in *Carleton* who would have been left without an avenue to correct a wrong, here, the plaintiffs have pleaded liability under the constitution and at common law.  As such, public policy does not provide relief to the plaintiffs in this action.

**IV.     The Plaintiffs' Wrongful Death and Survival Act Claims Fail.**

The plaintiffs' argument that they have a viable survival and wrongful death actions "for all the reasons listed in the complaint and throughout this Memorandum" because "Commander Bagshaw used excessive force against Mr. Wilson, and committed assault and battery against Mr. Wilson," and "Commander Bagshaw is not entitled to qualified immunity

for his actions" should be rejected. *See* Pl.'s Opp'n at 19. As shown in the defendants' motion to dismiss and in this reply, each of the claims asserted by the plaintiffs fail. And because the plaintiffs' Wrongful Death Act and Survival Act Claims (Counts II and V) are both derivative claims, neither can survive where there is no underlying cause of action. *See Nelson v. Am. Nat'l Red Cross,* 26 F.3d 193, 199 (D.C.Cir.1994) ("In the District of Columbia, a wrongful death action is derivative in nature and under both wrongful death and survival statutes, plaintiffs need a viable cause of action at time of death."). Therefore, dismissal of Counts II and V is appropriate because no viable claims can survive dismissal.

## V.      The Plaintiffs' Suit Against Chief Benedict in His Official-Capacity Fails.

While the plaintiffs concedes that Count VII (*Respondeat Superior*) is not recognized as a standalone claim, they argue that "all named defendants are proper defendants to this action given the caselaw." *See* Pl.'s Opp'n at 11. The plaintiffs' argument lacks merit. Not only is *Respondeat Superior* not a stand-alone claim, Chief Benedict is not an employer and because the District is a party and has notice of this action — it has participated in this action — this official capacity only suit against Chief Benedict cannot proceed. *See Arnold v. Moore*, 980 F. Supp. 28 (D.D.C. 1997) (dismissing District officials sued in their official capacity).

## CONCLUSION

For these reasons, and the reasons stated in the defendants' motion to dismiss and the District's motion for partial summary judgment, the Court should grant this motion.

Date:  December 15, 2023                    Respectfully submitted,

                                            BRIAN L. SCHWALB
                                            Attorney General for the District of Columbia

                                            STEPHANIE E. LITOS
                                            Deputy Attorney General
                                            Civil Litigation Division

/s/ Patricia A. Oxendine
PATRICIA A. OXENDINE
D.C. Bar No. 428132
Chief, Civil Litigation Division, Section I


/s/ James C. Underwood III
KERSLYN D. FEATHERSTONE
D.C. Bar No. 478758
Senior Assistant Attorney General
JAMES UNDERWOOD III
D.C. Bar No. 1765117
Assistant Attorney General
Office of the Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
(202) 724-6600; (202) 701-0255 (direct)
(202) 741-8924 (fax)
kerslyn.featherstone@dc.gov;
james.underwood@dc.gov

*Counsel for Defendants*