UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ESTATE OF LAZARUS WILSON, *et al.*,

    *Plaintiffs*,

v.

DISTRICT OF COLUMBIA, *et al.*,

    *Defendants*.

No. 23-cv-1987 (DLF)

**MEMORANDUM OPINION**

    The estate of Lazarus Wilson and Tanya Wilson bring this suit alleging constitutional and common law violations against the District of Columbia, former Interim Chief of Police Ashan Benedict, and Commander Jason Bagshaw. Compl., Dkt. 1. Before the Court is the defendants' motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. 9. For the reasons that follow, the Court will grant the defendants' motion to dismiss.

**I.    BACKGROUND**[1]

    This case arises out of a tragic shooting incident in the Wharf area of Washington, DC on the evening of July 16, 2022. Compl. ¶¶ 9–10. That evening, Lazarus Wilson arranged to purchase a watch from a private citizen. *Id.* ¶ 12. Accompanied by a friend, Mr. Wilson waited for the seller to arrive at the previously determined location for the sale. *Id.* ¶ 15. Eventually, two individuals approached Mr. Wilson and his friend—one of whom Mr. Wilson recognized as the seller of the

---

[1] Because this order resolves a motion to dismiss, the Court accepts the well-pleaded factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). But the Court does not consider modifications to the allegations in the complaint or new facts introduced in the plaintiff's subsequent briefs. *Cf. Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 80 n.5 (D.D.C. 2021) (rejecting the plaintiff's attempt to introduce new facts in later-filed briefs).

watch. *Id.* ¶ 16. Yet, rather than selling Mr. Wilson a watch, the two individuals instead attempted to rob Mr. Wilson and his friend. *Id.* ¶¶ 16–19. One "grabbed Mr. Wilson's friend at gunpoint and started to pull him back to an unknown vehicle" while the other "began to assault Mr. Wilson." *Id.* ¶¶ 17–18. Mr. Wilson, who was armed, retrieved his firearm and pointed it towards the individual holding his friend at gunpoint. *Id.* ¶ 19.

Commander Bagshaw, off-duty at the time, was dining at the nearby Bistro du Jour. *Id.* ¶ 11. According to the complaint, Commander Bagshaw was alerted to the commotion nearby, left the restaurant, and came upon the scene of the attempted robbery around the time that Mr. Wilson had drawn and pointed his firearm at the would-be robbers. *Id.* ¶¶ 11, 20. Commander Bagshaw fired two, ultimately fatal, shots at Mr. Wilson from behind using his service weapon. *Id.* ¶ 20. Commander Bagshaw did not announce himself nor order anyone to drop their weapons prior to shooting Mr. Wilson. *Id.* ¶¶ 21–22.

Mr. Wilson's estate and his mother, Tanya Wilson, bring claims against Commander Bagshaw, including a § 1983 claim for excessive use of force in violation of the Fourth Amendment (Count I), *id.* ¶¶ 34–55; assault and battery (Count IV), *id.* ¶¶ 86–91; and gross negligence (Count III), *id.* ¶¶ 56–73. The plaintiffs also bring claims under the Wrongful Death Act (Count II), *id.* ¶¶ 74–85 and Survival Act (Count V) against Commander Bagshaw, *id.* ¶¶ 92–97. Finally, the plaintiffs bring claims against former Interim Chief Benedict and the District of Columbia for municipal liability under § 1983 (Count VI), *id.* ¶¶ 98–107 and respondeat superior liability (Count VII), *id.* ¶¶ 108–113. The defendants move to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. 9.

## II.	LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

When deciding a Rule 12(b)(6) motion, well-pleaded factual allegations are "entitled to [an] assumption of truth," *Iqbal*, 556 U.S. at 679, and the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  But the Court need not accept "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts alleged in the pleadings. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief

[is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

### III.   ANALYSIS

#### A.   Fourth Amendment (Count I)

The plaintiffs contend that Commander Bagshaw used excessive force in contravention of Mr. Wilson's Fourth Amendment rights by shooting him, rendering Commander Bagshaw liable under 42 U.S.C § 1983. Compl. ¶¶ 34–55. Section 1983 "holds liable '[e]very person, who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, [another person] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Hoai v. Vo*, 935 F. 2d 308, 312 (D.C. Cir. 1991) (quoting 42 U.S.C. § 1983). "To state a claim under [§] 1983, a plaintiff must allege both (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the defendant acted under color of the law of a state, territory or the District of Columbia." *Id.* (internal quotation marks omitted).

Commander Bagshaw raises qualified immunity as a defense to the plaintiffs' § 1983 claim for excessive force. *See* Mot. to Dismiss at 9–14. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because qualified immunity is "immunity from suit," the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232 (internal quotation marks omitted). Defendants "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or

constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Id.* (internal quotation marks omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).

A claim of excessive force under the Fourth Amendment turns on the "objective reasonableness" of the officer's actions. *Johnson v. District of Columbia*, 528 F.3d 969, 973 (D.C. Cir. 2008). A police officer's "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The use of deadly force is reasonable where an officer has "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Because officers must make split-second judgments on what degree of force to use in tense and uncertain situations, assessing whether a particular use of force was reasonable requires adopting "the perspective of a reasonable officer on the scene, rather than [] the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Ultimately, the inquiry is fact-bound and requires the Court to pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Based on the facts alleged in the complaint, Commander Bagshaw did not use unreasonable force when he shot Mr. Wilson. The plaintiffs' account reflects that Commander Bagshaw entered a tense and chaotic scene. Four individuals were engaged in an altercation, with Mr. Wilson

"screaming at [one] individual to let his friend go" and pointing his own firearm at the would-be robber. Compl. ¶¶ 17–19.  Under these circumstances, it was appropriate for Commander Bagshaw to conclude that there was a significant risk that the already violent encounter would escalate, and that Mr. Wilson posed an immediate threat to others' safety.  Accordingly, terminating the encounter with the use of deadly force was reasonable. *See Graham*, 490 U.S. at 396.

The plaintiffs argue that Commander Bagshaw is not entitled to qualified immunity because he failed to provide a warning prior to firing his weapon and because he failed to reasonably assess that Mr. Wilson was acting in self-defense. Opp'n at 16–18, Dkt. 12.  While it is true that officers must give a warning "where feasible" prior to using deadly force, *Garner*, 471 U.S. at 11–12, "this omission is not determinative," *Bushrod v. District of Columbia*, 521 F. Supp. 3d 1, 24 (D.D.C. 2021).  "When the chaotic nature of the situation and an immediate threat to the safety of one or more individuals justifies deadly force, it may often be infeasible to give a warning and wait for it to be heeded (or not)." *Bushrod*, 521 F. Supp. 3d at 24.  Here, Commander Bagshaw encountered Mr. Wilson when the latter already had his gun drawn and pointed at another individual.  Under these circumstances, a reasonable officer could conclude that delaying action by issuing a warning would pose too great a risk to others' safety. *Wallace v. District of Columbia*, 685 F. Supp. 2d 104, 111 (D.D.C. 2010) ("[T]he law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect.").  While Commander Bagshaw may have failed to realize that Mr. Wilson was not committing a crime, but rather acting in self-defense, a reasonable mistake of fact does not preclude the application of qualified immunity.  *See Arrington v. District of Columbia*, 597 F. Supp. 2d 52, 61–62 (D.D.C. 2009) ("Even if an officer's belief that there was a need to utilize

force was a mistaken one, the officer's qualified immunity defense prevails if a reasonable officer possessing the same information could have believed that his conduct was lawful." (internal quotation marks omitted)); *see also, e.g.*, *Wilkins v. City of Oakland*, 350 F.3d 949, 955–56 (9th Cir. 2003) (holding that if officers' "mistaken impression that [a plain-clothes officer] was a civilian threatening another civilian with a gun" was reasonable, their use of force against the plain-clothes officer would not violate the Fourth Amendment); *Mason-Funk v. City of Neenah*, 296 F. Supp. 3d 1006, 1021 (E.D. Wis. 2017) (police officers who mistook an armed, escaping hostage for the hostage-taker did not use unreasonable force in shooting him). Further, for the same reasons that a reasonable officer could conclude that issuing a warning would be infeasible under the circumstances, a reasonable officer could also conclude that expending time ascertaining the nature of the altercation, and thus failing to immediately neutralize a grave risk to others' safety, would be unjustified. Because the Court finds that Commander Bagshaw's use of force was reasonable under the totality of the circumstances, his defense of qualified immunity bars the plaintiff's § 1983 claim. Accordingly, the Court will dismiss Count I of the Complaint.

## B. Municipal Liability (Count VI)

The plaintiffs' municipal liability claim alleges that the District of Columbia's and Metropolitan Police Department's "failure to train or supervise their [sic] Officer Bagshaw not to engage in activities with the public under his official capacity as a law enforcement officer while off-duty" resulted in the shooting death of Mr. Wilson, rendering the defendants liable under § 1983. Compl. ¶ 99. Because the Court has already found that Commander Bagshaw did not commit a constitutional violation, the Court must also dismiss the plaintiffs' claim for municipal liability under 42 U.S.C. § 1983 against the District of Columbia and Interim Chief Benedict. *See* Compl. ¶¶ 98–107.

In determining whether a plaintiff has sufficiently pled a claim for municipal liability, the Court must engage in a two-step inquiry. *Baker v. District of Columbia*, 326 F. 3d 1302, 1306 (D.C. Cir. 2003). "First, the court must determine whether the complaint states a claim for a predicate constitutional violation. Second, if so, then the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation." *Id.* (cleaned up). Here, the Court need not proceed past the first step because it has determined that Commander Bagshaw's use of force against Mr. Wilson did not violate the Fourth Amendment. Thus, no predicate constitutional violation supports a claim for municipal liability. *See Arrington*, 597 F. Supp. 2d at 62; *Simmons v. Skelonc*, No. 20-2845 (CKK), 2021 WL 3207042, at *7 (D.D.C. 2021) ("[W]here, as here, a court concludes that an official is immune from § 1983 liability, the District's liability is precluded." (cleaned up)). Accordingly, the Court will dismiss the plaintiffs' municipal liability claim (Count VI).

### C.     Assault and Battery (Count IV)

The plaintiffs allege that Commander Bagshaw committed common law assault and battery. Compl. ¶¶ 86–91. Under D.C. law, an assault is "an intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the victim." *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993). A battery is "an intentional act that causes a harmful or offensive bodily contact." *Id.* Under D.C. law, "[a] police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary." *Id.* (internal quotation marks omitted). "To evaluate whether qualified privilege applies, District of Columbia courts use the same objective reasonableness standard applicable to qualified immunity under § 1983." *Bushrod*, 521 F. Supp. 3d at 29.

Commander Bagshaw raises qualified privilege as a defense to the plaintiffs' assault and battery claim. *See* Mot. to Dismiss at 10–11. Because the Court has determined that Commander Bagshaw's use of force was reasonable in its qualified immunity analysis, it must reach the same conclusion in assessing the applicability of qualified privilege and will accordingly dismiss the plaintiffs' assault and battery claim (Count IV). *See Bushrod*, 529 F. Supp. 3d at 30 (dismissing assault and battery claim under doctrine of qualified privilege after determining that qualified immunity barred the § 1983 claim); *Wallace*, 685 F. Supp. 2d at 112 (same).

### D. Gross Negligence (Count III)

The plaintiffs bring a stand-alone claim for gross negligence against Commander Bagshaw. Compl. ¶¶ 74-85. The Court will dismiss this claim because gross negligence is not a stand-alone basis for liability under District of Columbia law. Instead, courts analyze "whether a defendant acted with gross negligence only in limited circumstances where gross negligence is a specific element of a claim or defense or for equitable reasons." *Hernandez v. District of Columbia*, 845 F. Supp. 2d 112, 116 (D.D.C. 2012) (internal citations omitted). The plaintiffs posit an equitable reason—to promote public policy by "discourag[ing] aggravated wrongs"—in support of their gross negligence claim. Opp'n at 8–9. But the cases that the plaintiffs rely on for this proposition are about contractual exculpatory clauses, not excessive force claims. *See, e.g.*, *Carleton v. Winter*, 901 A.3d 174, 181 (D.C. 2006). Furthermore, there is no compelling public policy reason to permit a gross negligence claim when the Court has already determined that Officer Bagshaw's use of force was sufficiently reasonable to preclude liability on the intentional—and thus more grievous—constitutional and common law torts that plaintiffs have alleged.

Even if the Court were to construe the gross negligence claim as an ordinary negligence claim as the plaintiffs urge, *see* Opp'n at 10, the claim would still have to be dismissed. Under District of Columbia law,

> if, in a case involving the intentional use of force by police officers, a negligence count is to be submitted to a jury, that negligence must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care.

*District of Columbia v. Chinn*, 839 A.2d 701, 711 (D.C. 2003). Here, the plaintiffs' (gross) negligence claim rests on the exact same factual scenario as do their Fourth Amendment and assault and battery claims. Accordingly, the Court will dismiss Count III of the complaint.

E.     **Wrongful Death and Survival Claims (Counts II and V)**

The D.C. Wrongful Death Act permits "the spouse or domestic partner" of a person who is wrongfully killed "to maintain an action and recover damages" when "the death of a person is caused by the wrongful act, neglect, or default of a[nother] person." D.C. Code § 16-2701(a). The D.C. Survival Act permits the legal representative of a deceased person's estate to bring an action which has accrued in favor of that person prior to his death. *See id.* § 12-101. "[T]he Survival Act and Wrongful Death Act do not create substantive rights but rather provide remedies for tortious conduct that results in death." *Wallace*, 685 F. Supp. 2d at 112–13 (citing *Nelson v. Am. Nat'l Red Cross*, 26 F. 3d 193, 199 (D.C. Cir. 1994)). In other words, wrongful death and survival claims are derivative in nature—a plaintiff must have a viable underlying cause of action to proceed. *See id.* Because the Court will dismiss the plaintiffs' substantive causes of actions against Commander Bagshaw, the Court must similarly dismiss the plaintiffs' Wrongful Death Act (Count II) and Survival Act (Count V) claims. *See id.* at 113 ("Because all substantive causes of

action have been dismissed, [the plaintiff's] Survival Act and Wrongful Death Act claims must also be dismissed.").

### F. Respondeat Superior (Count VII)

The plaintiffs plead a stand-alone claim of "respondeat superior" against the District and Former Interim Chief Benedict based on Commander Bagshaw's alleged common law violations. Compl. ¶¶ 108–113. "Respondeat superior is not an independent tort claim, but rather a legal theory of vicarious liability that transfers liability from an agent to its principals." *Simmons*, 2021 WL 3207042, at *7 (citing *Convit v. Wilson*, 980 A.2d 1104, 1114 (D.C. 2009). Because the Court will dismiss the plaintiffs' common law claims against Commander Bagshaw, there are no remaining claims for which the District or Benedict can be vicariously liable. *See id.* Accordingly, the Court will dismiss the plaintiffs' respondeat superior claim (Count VII).

## CONCLUSION

Commander Bagshaw made a fatally tragic error on July 16, 2022. The Court has no doubt that Mr. Wilson's unexpected death, along with the deeply unfortunate circumstances that surrounded it, are a tremendous source of pain for his family and community. Yet, the sole role of a court is to determine and apply the law to the facts before it. For all of the reasons the Court has stated, it must grant the defendants' motion to dismiss. A separate order consistent with this decision accompanies this memorandum opinion.

/s/ Dabney L. Friedrich
DABNEY L. FRIEDRICH
United States District Judge

September 29, 2024